Case number 22-7154. Cameroon Whiteru, individually and as personal representative of the estate of Okimuchi Whiteru and Agnes Whiteru Appellants v. Washington Metropolitan Area Transit Authority. Mr. Levy for the appellants, Mr. Shaw for the appellants. Mr. Levy, is it pronounced Levy or Lee? Lee, but I answered either one, Your Honor. All right. Okay. Well, Judge Ginsburg has told us to go ahead. So let me ask you first, and I'll ask the other side as well. What is your position on certifying this issue to the local court of appeals? That is, which restatement provision? May it please the court, Andrew Levy, on behalf of the plaintiff's appellants. Obviously, that is a matter within the discretion of this court. The appellant's position is that while this is a case of first impression and that there's never been, there is no case on all fours directly on point, that just as this court felt itself capable of deciding the question in Whiteru 1, that there is no reason that this court is not, does not have the expertise and the knowledge of D.C. law to decide this question. Yesterday was 10 years to the day since Oki Whiteru paid the required fare, went into the Judiciary Square metro station, and several hours later, got a slow, painful and completely preventable death. The issue, the controlling issue, is whether WMATA's special relationship with Mr. Whiteru continued after he stumbled and fell backwards into a place passengers were not permitted. Had he fallen forward, of course, there would be no question and we would not be here. Can it be that the special relationship turned on the happenstance of which way he had the misfortune to fall backwards or forward? In Whiteru 1, this court held that in the case of contributory negligence, the Section 314A special relationship took the case out of the general contributory negligence rule, that notwithstanding his contributory negligence, if WMATA knew or should have known of his plight, it had a duty to take reasonable steps on his behalf. The answer we respectfully submit should be no different for the general trespass rule under Section 329. It is explicitly referred to as the general rule, but as the commentary to Section 314A notes, the special relationship, quote, takes the case out of the general rule. The Section 314A duty to aid did not end when he fell and cried for help. That's when it began. To interpret the rule, the very moment Mr. Whiteru most needed the carrier's assistance was the moment he lost it, would we submit be bizarre, and it is not required by DC law. And we begin with the statement that you see in the Gentee case and in the Gould case, that all of the decisions with respect to the trespasser standard recognize that it is always contextual, and that the carrier's relation to and duties towards passengers constitutes a critical context. Here, the context is that there was a special relationship between Mr. Whiteru and WMATA. It is the nature of a relationship, unlike, say, a status, that it is not a bubble that bursts upon the happening of a certain event. And all of the cases relied upon by WMATA to hold that a trespasser, that there's no requisite duty on behalf of a trespasser, are distinguishable in critical respects. Either there was no special relationship, or in the case like Hines-Johnson, where the individual had chosen to go on the tracks, there is the notion of forfeiture, which is not present in this case. Plus, all of the cases cited by WMATA, all of the cases on which they rely, dealt with a liability for a primary injury. And here, no claim is made for Mr. Whiteru's initial injury. The claim, as in Whiteru 1, was that once he was in the position he was in, should the mere fact that he had accidentally fallen in a place, passengers were not committed. Let me say this, that I think WMATA's authorities are not only distinguishable, I think they're inapplicable. 314A uses this Yazoo, old case from the 20s or earlier, to prove its point. And there's no way to read Yazoo except that that man was a passenger when it mattered. He was on that platform, they knew it, well they didn't know it until the other passengers told them. He fell onto the track, still they didn't rescue him until later, but they had the duty to rescue because at the point it mattered, that is when he fell, he was a passenger. I don't see how you can read that any other way. Well, obviously, I agree with that completely, Your Honor. And I will say that the district court, who characterized this as a hard but nuanced issue, it broke the tie between the competing restatement sections by going and looking at the Yazoo case and saying, well, the restatement didn't really capture what that case actually held. And that, frankly, is irrelevant. The D.C. Court of Appeals did not adopt the cases that underlie or that generated the comment in the illustrations. It adopted the restatement itself and the comments and illustrations that were there. And it is certainly the case that the comment about the passenger who negligently falls off and there is a duty to come to his aid, is not only on all fours with this case, but the competing Section 329 illustration dealt with, again, a general rule. It dealt it only addressed the question of a primary injury, not that not the duty to come to the aid to prevent an aggravation of that injury. And I guess where I ultimately come down, Your Honor, is that more than one thing can be true at a time. When this court is faced with two seemingly contradictory statutory provisions, you don't feel compelled to choose one over the other. You make an effort to reconcile them and see, do they really, are they really irreconcilable? Is it truly a binary choice, as the district court seemed to believe? And I see into my rebuttal time, so I would like to leave note of what we see as an analogous situation that is maybe more familiar to everybody because the facts of this case are somewhat unusual and bizarre. But if you think about an innkeeper, who has the same duty as a common carrier, and a guest of the hotel has some sort of a seizure and accidentally falls into a fountain in the middle of the lobby. Well, everybody knows guests aren't allowed in the fountain in the middle of the lobby, but it couldn't truly be said that a guest in that situation, that the innkeeper has no duty to take reasonable steps to come to the aid of that individual. Mr. Levy? Yes, sir. Yeah, of course. But the facts of the case that Judge Henderson recounted depended vitally on getting notice from a fellow passenger about the accident. In this case, it seems you're imputing constructive knowledge to Amada because there's no evidence of actual knowledge, correct? There is no evidence of actual knowledge. We don't think that is a distinction that matters, Your Honor. The restatement of someone falls into a place where they could not be discovered by any means. It's reasonable steps, Your Honor. That's that's what we're talking about. And it is because the question is one of negligence. Correct. And so what constitutes a reasonable step in a negligence context is a precaution that is justifiable in view of the potential for injury. And here, what was it that Amada could or should have done that would have discovered the accident in a timely fashion? Your Honor, it is the law of the case that Amada and I believe undisputed that have an inspection. It's certainly a tribe. It's certainly a tribal. This is not undisputed, but it's certainly a jury question as to whether they should have known whether they knew or should have known. And the standard is always phrased as new or should have known. There's no suggestion that constructive knowledge is not enough. And if I should have known, I'll accept that. That's really what we're talking about. The record, Your Honor, is that both Amada's internal standard operating procedures and the national standard required the station manager to walk the station and to walk the platform end to end and to specifically look in places where a person might hide or where a package might be might be stacked. My understanding is that there is some evidence, testimony on the record that that inspection, because of the upward lights on the barrier, would not have revealed the person lying there. That's a tribal issue of fact. And the other thing I would add with respect to constructive knowledge, whether it's, as Amada argues, only actual knowledge is enough, that would create such a perverse incentive to the carrier to almost engage in willful blindness. Council, can I ask a clarifying question about what's before us? Yes, sir. As you know, there's two aspects to the duty to aid. The person has to be a passenger, and there has to be a reason to know. My understanding was that Amada moved for summary judgment in this motion, just on the ground that he is categorically not a passenger. They've not moved for summary judgment on the ground that there's no dispute of fact as to whether there was a reason to know. Is that right? I believe that is correct in the record, Your Honor. We'll know more in a minute. We'll give you a couple minutes more time. Thank you, Your Honor. Good morning. May it please the court. Thank you, Your Honor. Finding precedents applying DC tort law make two principles clear. One, a passenger becomes a trespasser when he enters a restricted area, even if accidentally. And two, such trespassers, at least if unknown, are owed only a duty not to be harmed through willful or wanton misconduct, not the special 314A duty to aid. Those entrenched principles of DC tort law resolve this case. It's not just about reconciling the two. It is about reconciling the two restatement provisions. But there is a long line of four decade line of unbroken cases from both this court and the DDC relying on for Holland and Copeland. Those are the D.C. Court of Appeals precedents that are consistent with Restatement Section 329 that hold this. A WMATA passenger who leaves the platform into a restricted station area, whether intentionally or accidentally, becomes a trespasser. Counsel, I'm sorry. Sorry to interject. But I want to ask you the very first thing you said. You said D.C. case law is clear. Easy tort binding precedents applying D.C. tort law. Yes. OK. So and the question in our case is when does a paying passenger. Yes. Lose whether they lose passenger status or exempted from the duty today because of a accidental trespass. Which D.C. case holds that they. Yes. OK. I'm going to answer that directly. There are two cases. If you add them together, answers your question. And Holland and. No, I'm going to start with actually a case of this court, the D.C. circuit. We cite a half dozen cases that are from DDC on pages 14 and 15 of our brief. One of those cases, though, was actually a decision by this court. We cited about a half dozen times. That's the Johnson case. In our brief, we cite the district court citation that was on remand from this court's decision, which quotes the rule that this court sites. But let me give you the site to this court's decision itself. It's 883 F2D at 130. That's Johnson case again cited about a half dozen times in our brief. Here's what this court said, quote, Under D.C. law plaintiff, a fair paying passenger became a trespasser when she jumped onto the tracks and thus may only recover for intentional wanton or willful injury. End quote. Then you take the D.C. Court of Appeals decision in Copeland, which rejects any distinction between jumping and falling onto the tracks. Those two cases together, both binding on this court, Johnson, because it's a decision of this court, Copeland, because it's a decision of the D.C. Court of Appeals. I'm not saying this is wrong. I just want to make sure we're on the same page. Yes. D.C. circuit case did not address an accidental trespass, right? Accidental. It was intentional. Correct. OK. And then you take that decision, which says a fair paying passenger. Just as you said, a WMATA fair paying passenger becomes a trespasser, no longer entitled to 314 a when they end up on the tracks. You combine that with Copeland D.C. Court of Appeals decision that says, quote, Whether it's intentional, accidental or inadvertent does not matter with respect to trespasser status under the restatement. That removes any daylight between those cases and this case. That's exactly this case on point. When you add up this court's binding decision and Copeland's binding decision, you get this case. So I very much appreciate the adding those two principles together. Yes. Just more directly, though, what would the logic be of this rule? What purpose does it advance if we concede that the person, if he fell the other way, if he fell the other way, he'd be owed a duty to aid. But because he fell into a restricted area, you say he's not. Sure. So the reasoning which we cite in their brief that's come from for and the D.C. Court of Appeals reasoning, this is because you have to look at it's the duty of the landowner or the common carrier. And that person shouldn't have a duty to aid. Right. Or a special even the ordinary negligence duty, they say, but certainly not a duty to rescue when someone goes into an area that's off limits, when they become a trespasser. That's the the rationale behind the tort rule. But whatever. And I can understand a competing rationale, certainly. Right. That no, you don't want them to do it. But the point is, the D.C. Court of Appeals has already chosen that that's the rule. They've adopted that rule. The D.C. Circuit applied it in Johnson and the D.C. You know, I have the additive principle. You have to add two together. The D.C. has added those two principles together already in both Whitaker and Hines, which, again, are cited in our brief. Those are exactly the question. You asked me, Judge Garcia, an accidental falling into a area of the train station that's off limits. That's both Hines. That person was senile, so didn't quite have the intentionality you would invoke. And then we have Whitaker from 1984, 40 years old. That person was intoxicated, just like Mr. Whitroom. So you have the binding precedent from Johnson. You have Copeland. Then you have D.C. applying Johnson and Copeland in both Whitaker and Hines. Absolutely. And I'm still just trying to figure out. So if this was in front of the D.C. Court of Appeals, they would say, yes, they certainly could say we don't have a case directly on point. We haven't addressed whether these two principles combined yield the result you want. And if they were to ask why, what principle of tort law is served by saying that the special relationship to a passenger ends because they fall half an inch over the line into a restricted area, as opposed to on the platform? Well, the rationale is the one that I've given you that we say is you don't put the burden on the landowner or the common carrier when someone enters a restricted area. They shouldn't have that same ordinary duty. That's the whole point of the trespasser rule, whether it's one inch over or 100 feet over the line. That is the rationale is when you're somewhere where you're not. This goes back to the D.C. Court of Appeals decision from 70 years ago. Right. With respect to the Jefferson Memorial. Yes. Lots of people are invited on to the Jefferson Memorial. But when someone goes into the grassy knoll behind it, it's not restricted. Then they don't get the same protections or the same ordinary duty of care. So I think important point is when you look at these cases, they don't have a single. I'll try to have this be my last question. Oh, of course. So on for for right. This case is as if Mr. This case is as if Mr. For was in the Jefferson Memorial, tripped and fell down and landed in the grassy area. That's right. And the question is whether it would have come out the same way. Anything is different in the sense of saying it certainly could be very different in terms of a reason to know. This is not about whether you have to inspect those areas, but it is about whether there's a duty to aid. So if an employee sees the person down there, is there a duty to aid or are they just now a known trespasser? So let me give you two answers. What is, of course, the court that decided for is the same court that decided Copeland and said expressly whether you trip and fall. Copeland was even worse. He was unconscious and they put him on the track. So I am fully confident that unless the D.C. Court of Appeals was going to reverse itself from Copeland, whether you trip and fall into that grassy knoll intentionally, accidentally or inadvertently. That's the phrase Copeland uses. Same duties apply, Your Honor. Now, there is a question of and Judge Ginsburg, I think you touched on this. If the person actually saw them. Right. You don't have to decide that in this case. You could leave that question open because it is undisputed that it was unknown that Mr. Which was there and it's not just a constructive knowledge test. It's an actual knowledge test that comes from the D.C. Court of Appeals decision in Copeland, which said there's one duty until you discover the trespasser. That is when you haven't discovered him. He's unknown. It is the wanton, willful misconduct duty. Obviously, no duty to rescue. But once you discover that's the word that Copeland uses. Once you discover that person, why didn't they discover it from the surveillance camera, which shows him falling backwards? Your Honor, it's it just it wasn't known at the time. Of course. What do you do with those surveillance? Those surveillance cameras are there. But someone is not watching the surveillance camera every second of every day. So in that two seconds, it took him. Maybe they should be. And maybe that's a jury question. Well, Your Honor, they they themselves have disclaimed any violation of any. Their their claim isn't that WMATA was negligent in not preventing his fall or or seeing it there. Their their claim is that they didn't rescue him. Your Honor, that is the claim. And I want you to I want to say because they knew or had reason to know. Well, here's here's the jury issue, whether they had reason. Judge Henderson, respectfully, you would be right if that if that were the right standard, new or reason to know. But under the D.C. Court of Appeals or a trespasser as opposed to a passenger, you're right. If it were a passenger, that's the standard 314 says no or reason to know. But once you're a trespasser, the D.C. Court of Appeals in Copeland said, no, it's actual discovery. And I want to point you to Estrada. It's on pages 18 and 19 of our brief. Here's what Estrada, another D.C. Court of Appeals decision says exactly. Judge Henderson on this question of constructive knowledge versus actual knowledge, it says, quote, the duty to abstain from willful or wanton misconduct does not arise unless the owner has actual rather than merely constructive knowledge of the trespassers presence on the property. And is cognizant that he's in danger of immediate rather than merely possible harm. So if he's in the trespasser box and not the passenger box, there's no absolutely. And it's an actual knowledge whether he's a known threat, not should have known. It's not that they should have discovered him. The D.C. Court of Appeals said that's not the standard. It says when it comes to trespasser. Yes. If you actually know they're there, then maybe a greater duty applies. You don't have a passenger. Absolutely. He fell. He was still a passenger. We can argue about whether when he hit, he was a trespasser. But you can't explain Yazoo any other way than that fellow fell off the platform and hit the tracks. The railroad had the duty to aid him. Sure. And read that except to to construe he was a passenger when it mattered. Judge, I agree with your reading of Yahoo. Yazoo. The distinction I would draw on Yazoo is that it says specifically in the case and in the restatement that the conductor, the train crew discovered it. They knew he fell. They saw him. They were notified by a passenger and they saw him. So that takes him from the unknown trespasser like this case into the known trespasser. That quote that I just read you from the D.C. Court of Appeals is completely consistent with Yazoo. I completely agree. It's a reason to know. And that's a jury. But that's what Estrada says. No, it's not a reason to know. They said constructive knowledge is not enough. So that's when you have to reconcile 314, which I agree with you, Judge Henderson. If if that case, if the train crew didn't actually know he fell, then that case would be a big problem for me and I would lose. The problem is in that case, it says explicitly and in the restatement and illustration, it says the train crew discovered him. So you can reconcile 314A and that's the court's job. Reconcile 314A and the on point illustration in 329, right? Now, counsel, just on Yazoo. Yes. It held there was a duty to aid, right? A duty. Well, it didn't discuss the trespasser. But yes, a duty to aid because they knew he was there. That's a quite clarifying question. My understanding is that even a known trespasser is not owed a duty to aid. It's sort of a different duty to prevent harm. Right. So. Yes. So Yazoo says, yes, that there was a duty to aid despite technically being a trespasser. Well, so here's where I would push back on that, Judge Garcia. Again, I don't think you need to resolve this because he was known and the person here was unknown. It's not constructive knowledge, actual knowledge. But even taking that, putting that aside, here's the difference in Yazoo. That was a 1906 Mississippi case. What happened is this person's if you want to talk about Yazoo again, the restatement doesn't go into any of this. But if we're going to bootstrap into Yazoo, what happened there, 1906 Mississippi case, he ended up on the side of the tracks in a grassy field. It's unclear whether he was a trespasser. That could have been public land. That could have been the railroads. But the case doesn't analyze trespasser. That's what the illustration in 329 does, which is based on a different case, Frederick. And in that case, we know 329. There's no daylight between 329. In this case, it's an unknown person who is a trespasser that accidentally falls through no fault of his own into a subway. Right. And the court says it's wanton or I'm sorry, the restatement says apply the wanton willful misconduct standard that's in the restatement. So if you're going to parse between the two restatement sections, 329 is actually more on point. But the job, I think, is this court is to read both the sections as a whole, as as my friend, Mr. Levy said, and reconcile it with the D.C. court cases. Johnson, Copeland, Estrada, they have not cited you yet today. A single D.C. case that's even in the ballpark of Johnson, Copeland, Whitaker, Hines, all of those. You put them together. Unbroken line of 40 year cases that say when you have an unknown trespasser, whether intentionally or accidentally. And these are all WMATA cases. Right. Falling into falling into a restricted area. You owe you don't owe a duty to rescue. You don't owe that special duty. Just the duty to refrain from wanton willful misconduct. And obviously the failure to find him wasn't wanton or willful. And for that reason, the judge both got it exactly right. Thank you. Thank you. Mr. Levy, why don't you take two minutes? Thank you, Your Honor. Copeland has nothing to do with this case. It doesn't help this court answer the question because Copeland had never been in a special relationship with it, never been a paid passenger. So there was no question of whether 314 a took took it out of the general rule. So Copeland is is just is irrelevant. The Whitaker, the Hines case, those cases in all involved volitional conduct. There was plaintiffs had a theory that the senility took it out of it or the intoxication took it out of it. But that was not accepted. And so those cases have to be understood in the context of of of a volitional act. And again, they also dealt only with the initial injury. They didn't speak to the to the aggravation of the of the injury. The. But but my gestalt with respect to the Kelly's presentation is that we are not arguing about the finer points of trespasser law. And all of those cases about that have got to be a known trespasser versus an unknown trespasser are beside the point in this case. Because there's no question that as a result of the special relationship and section 314 a on unambiguously uses the standard new or should have known. So if if the duty that existed between Mamata and Mr. Whittier was that between a paid passenger and and a carrier as it as it was, then it all of that case law cited by counsel is beside the point. That's all three twenty nine law. It's not at all three fourteen a law. All right. Let me ask you one thing. Mr. Whittier wouldn't have even been in the metro stop if Mamata hadn't decided to extend his hours in order to protect the people. That's right. Your honor. No question. Thank you. Thank you.
judges: Henderson, Garcia, Ginsburg